# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH


## NO. 2-09-276-CR

MUQTASID QADIR                                                     APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

------------

FROM 213TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Muqtasid Qadir, pro se, appeals from the trial court's denial of his motion for forensic DNA testing. We will affirm.

This appeal finds its genesis in Qadir's conviction for murdering his girlfriend. *See Qadir v. State*, No. 02-96-00123-CR, slip op. at 1–2 (Tex. App.—Fort Worth, August 14, 1997, no pet.) (not designated for publication). The evidence showed that Qadir's girlfriend, Barbara Johnson, was stabbed to death

---

[1]*See* Tex. R. App. P. 47.4.

and found by her grandfather, Joe McLane, at his house, where she resided. Johnson had been repeatedly stabbed in her shoulders, head, neck, hands, and arms. McLane called the police, who arrived shortly thereafter and secured the scene. McLane looked through the house but did not discover anything missing. Fort Worth Police Officer G.T. Baskin was one of the first officers on the scene, and in his search of the premises, he discovered a trail of blood leading away from the house to the north. Other officers gathered evidence, such as blood samples and fingerprints, at the scene.

The day after the murder, Detective John Thornton questioned Qadir at his place of work, ostensibly because he had been dating Johnson. During the interview, Thornton became suspicious because Qadir's hand was cut; Detective Thornton invited Qadir down to the station. Police procured a warrant for samples of Qadir's blood, hair, and saliva and tests later revealed that the blood matched the blood type of some of the samples taken from different locations at the scene of the murder. Further DNA testing provided an even more conclusive match. A letter describing details of the crime that had not been released to the public was later received by the police. Qadir's fingerprint was on the envelope. Additional evidence was elicited that Qadir had recently threatened Johnson several times.

Since his conviction, Qadir has filed several appeals to this court. In 1996, Qadir appealed his conviction directly to this court. *Id.* This court affirmed his conviction. *Id.* In 1999, Qadir appealed to this court attempting to reverse the

2

trial court's denial of his motion to recuse the judge presiding over his post-conviction habeas corpus petition. *See Qadir v. State*, No. 02-99-00517-CR, slip op. at 1 (Tex. App.—Fort Worth 2000, no pet.) (dismissing appeal for want of jurisdiction). In 2002, Qadir appealed to this court attempting to reverse an order denying his motion to recuse the same judge from presiding over his request for DNA testing. *See Qadir v. State*, No. 02-02-00077-CR, slip op. at 1–2 (Tex. App.—Fort Worth 2002, no pet.) (holding that we lacked jurisdiction to rule on defendant's appeal because we have no power to review interlocutory orders and the trial court had not yet ruled on his DNA testing request). In 2009, Qadir filed a petition for mandamus in this court, asking us to compel the presiding judge to rule on a motion for DNA testing that he asserted had been pending in the trial court for seven years without a ruling. *In re Qadir*, No. 02-09-00029-CV, 2009 WL 417293, at *1 (Tex. App.—Fort Worth Feb. 20, 2009, orig. proceeding) (mem. op.). In that opinion, we noted that the trial court had informed us that Qadir's case file had been closed for several years and that there was no pending motion for DNA testing. *Id.* Qadir has since filed a request for DNA testing in a motion he titled "Second, or Successive Motion for DNA Testing In Accordance with the T.C.C.P., Article 64." The trial court denied his request. This appeal followed.

In his first issue, Qadir argues that the trial court erred by denying his request to conduct post-conviction DNA testing on items he claims were available for testing but were never tested; namely, broken bloody glass jar fragments, a bloody kitchen table knife, and a bloody footprint from carpet found

3

at the crime scene.  Qadir argues that if these items were tested, the results would exculpate him.

Under article 64.01, a convicted person may file a motion for forensic DNA testing of evidence containing biological material.  Tex. Code Crim. Proc. Ann. art. 64.01(a) (Vernon Supp. 2009).  A motion under article 64.01 must be accompanied by an affidavit, sworn to by the convicted person, containing facts in support of the motion.  *Id.*  Furthermore, the court of criminal appeals has held that under this statutory scheme, any evidence not previously subjected to DNA testing may not be subjected to post-conviction DNA testing unless DNA testing was either completely unavailable at the time of trial or was available but not technologically capable of providing probative results.  *Routier v. State*, 273 S.W.3d 241, 245 (Tex. Crim. App. 2008).  Whether Qadir may obtain post-conviction testing on these alleged untested items thus depends upon whether he has shown that they were not previously subjected to DNA testing through no fault of his own and that the lack of previous testing was "for reasons that are of a nature such that the interests of justice require DNA testing."  *Id.* at 246.  Although Qadir claims that these items were not tested "through no fault" of his own, Qadir states that these items were not tested because his attorney failed to conduct "an independent DNA testing."  DNA testing was available at the time of trial to test the remaining items Qadir now complains of, and several items were in fact successfully tested by the State.  Qadir does not dispute this.  Therefore, the provisions of Article 64.01(b)(1)(A) do not apply to these items.  We overrule

4

Qadir's first issue. *See Routier*, 273 S.W.3d at 251–54 (holding that defendant was not entitled to post-conviction DNA testing on previously untested blood stains because DNA testing was available at the time of trial).

In his second issue, Qadir argues that newer technologies now exist that would provide "a reasonable likelihood of results that are more accurate and probative than" the DNA tests that were run at the time of his trial on blood from the bathroom wall, sink and floor; the front door exterior; the front porch; an iron; and a sheet—all from the crime scene.

Under article 64.01(b)(2), if evidence was previously subjected to DNA testing, the convicted person must demonstrate in his motion that the evidence can be "subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test" in order to be entitled to further testing. *See* Tex. Code Crim. Proc. Ann. art. 64.01(b)(2) (Vernon Supp. 2009); *Dinkins v. State*, 84 S.W.3d 639, 642 (Tex. Crim. App. 2002). In this issue, Qadir acknowledges that DNA testing was previously performed on these items inculpating him in the murder. His argument seems to be that the biological material was never tested to determine whether the blood stains existed prior to the murder; thus, according to Qadir, the State failed to prove that his blood was not already present at the crime scene prior to the murder. Qadir further argues that newer techniques exist now that allow for the determination of how old the blood stains were. Even assuming Qadir had demonstrated that the evidence can be subjected to newer

5

testing techniques that provide a reasonable likelihood of results more accurate and probative than the previous results, Qadir undermines his own argument because he admits that the State's expert testified at trial that tests existed to "tell how old blood is" at the time of his trial but that she never performed these tests. Therefore, like in Qadir's first issue, the provisions of Article 64.01(b)(1)(A) do not apply to these items he now raises in his second issue because by his own stance, he had the opportunity to test these items for a "blood time frame analysis" but failed to do so. We overrule Qadir's second issue. *See Routier*, 273 S.W.3d at 251–54.

In his third issue, Qadir makes numerous complaints that amount to a challenge to the legal sufficiency of the evidence supporting his conviction for murder. We conclude that Qadir's third issue is a collateral attack on the judgment of his murder conviction and that we have no jurisdiction to resolve the issue.

Although chapter 64 of the code of criminal procedure authorizes forensic DNA testing in cases in which the applicant meets the requirements enumerated in the statute, these amendments do not confer jurisdiction upon this court to entertain collateral attacks on the trial court's judgment of conviction or to review, under the guise of a DNA testing appeal, anything beyond the scope of those articles. *See* Tex. Code Crim. Proc. Ann. art. 64.03 (Vernon Supp. 2009); *see also Reger v. State*, 222 S.W.3d 510, 512–13 (Tex. App.—Fort Worth 2007, pet. ref'd), *cert. denied*, 552 U.S. 1117 (2008) (reasoning that the jurisdiction afforded

6

us under chapter 64 does not extend to collateral attacks on the judgment of conviction or allow us to revisit matters that should have been addressed on direct appeal). We dismiss Qadir's third issue.

Having overruled Qadir's first two issues and dismissed his third, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ.

DAUPHINOT, J. dissents without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 27, 2010